AO 91 (Rev. 11/11) Criminal Complaint

DOA
1/28/2025

# UNITED STATES DISTRICT COURT
for the District of Arizona

| | |
|---|---|
| United States of America<br>v.<br>Edgar Guadalupe JIMENEZ-Aguilar<br>YOB: 1988<br>Citizen of Mexico<br>*Defendant(s)* | Case No.<br>25-3043MJ |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

Beginning on an unknown date and continuing through on or about October 15, 2024, in the District of Arizona, the defendant, Edgar Guadalupe JIMENEZ-Aguilar, did knowingly and willfully combine, conspire, confederate, and agree with persons known and unknown, to transport and move within the United States aliens who had come to, entered, and remained in the United States in violation of law, by means of transportation and otherwise, and in furtherance of such violation of law, in violation of Title 8, United States Code, Section 1324(a)(1)(A)(ii).

All in violation of Title 8, United States Code, Sections 1324(a)(1)(A)(v)(I) and 1324(a)(1)(B)(i), (Conspiracy to Transport an Illegal Alien).

This criminal complaint is based on these facts:

See attached Statement of Probable Cause, incorporated by reference herein.

☒ Continued on the attached sheet.

Reviewed by AUSA Vanessa Kubota
*VK*

JOHANNA M NORDLAND
Digitally signed by JOHANNA M NORDLAND
Date: 2025.01.30 07:58:44 -07'00'

*Complainant's signature*

Johanna M. Nordland; Border Patrol Agent
*Printed name and title*

Sworn to before me and subscribed telephonically.

Date: January 30, 2025

M Morrissey
*Judge's signature*

City and state: Phoenix, Arizona

Honorable Michael T. Morrissey, U.S. Magistrate Judge
*Printed name and title*

## STATEMENT OF PROBABLE CAUSE

Your Affiant, Johanna M. Nordland, a Border Patrol Agent with the United States Border Patrol being first duly sworn, hereby deposes and states as follows:

### INTRODUCTION AND BACKGROUND OF AFFIANT

1. Your Affiant is a law enforcement officer of the United States within the meaning of 18 U.S.C. § 2510(7), who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in 18 U.S.C. § 2516. Specifically, your Affiant is a Border Patrol Agent ("BPA") with the United States Border Patrol ("USBP") assigned to the Casa Grande Station in Casa Grande, Arizona. Your Affiant has been a BPA since May of 2020. Your Affiant has completed the USBP Academy, where your Affiant received instruction in constitutional law, immigration law, criminal law, and federal and civil statutes. Your Affiant has also received instruction in the detection, interdiction, and arrest of narcotics smugglers, alien smugglers, alien smugglers, and individuals illegally present in the United States. As a BPA, your Affiant has received instruction in interviewing, interrogation, formal training in evidence collection.

2. During your Affiant's experiences as a Federal Agent, your Affiant has been the Case Agent for numerous criminal cases such as alien smuggling, criminal alien cases, and narcotics smuggling. In March of 2023, your Affiant was assigned as a Disrupt Agent for the Casa Grande Border Patrol Station. This unit is a targeted enforcement unit that focuses on vehicle interdiction, as it pertains to human and narcotic smuggling as well as developing and following through on cases of alien and narcotic smuggling. On several occasions your Affiant has received advanced training to enhance your Affiant's investigative and analytical skill sets. Since November of 2023, your Affiant has been assigned to the Advanced Processing Team for the Casa Grande Border Patrol Station. This team is a targeted enforcement unit that focuses on gathering intelligence through interviews and developing and following through on cases of alien and narcotic smuggling. Your Affiant has routinely investigated violations of Titles 8, 18, 19, and 21 of the United States Code, as well as various other federal law violations.

3. Your Affiant has regularly conducted surveillance and counter surveillance to protect operational integrity and security and investigate violations of federal law. Your Affiant has accessed multiple databases and intelligence-based systems, and through your Affiant's investigations, has assisted in interagency and multi-agency investigations, as well as applied additional charges to defendants that field agents were not aware of at the time of apprehension. Your Affiant has assisted in the drafting, submission, and execution of probable cause warrants for arrests, electronic devices, conveyances, and dwellings.

4. The statements contained in this Affidavit are based on information derived from your Affiant's personal knowledge, training and experience; information obtained from the knowledge and observations of other sworn law enforcement officers, either directly or indirectly through their reports or affidavits; surveillance conducted by law enforcement officers; analysis of public records; analysis of social media information; analysis of telephone records; intercepted communications; and analysis of financial records.

5. Because this Affidavit is being submitted for the limited purpose of establishing probable cause for a complaint, your Affiant has not set forth each and every fact or source of information establishing the violation of federal law.

## PROBABLE CAUSE

### I. Background

6. In 2021, the HSI Phoenix office initiated an investigation into a Transnational Criminal Organization ("TCO") involved in human smuggling, with coordinators and stash houses operating out of Phoenix, Arizona. Surveillance and investigative intelligence established that Edgar Guadalupe JIMENEZ-Aguilar ("JIMENEZ") was a confirmed load driver for the TCO, responsible for picking up Illegal Aliens ("IAs") from the desert areas in Pinal and Pima Counties in Arizona after the IAs had entered the United States illegally by crossing the international border from Mexico. Agents observed JIMENEZ talking to a known smuggling coordinator operating out of Mesa, Arizona. Based on continued

surveillance, JIMENEZ was tracked to known smuggling locations and observed picking up IAs in Tucson. Based on JIMENEZ's association with the known smuggling coordinator, JIMENEZ was further suspected of operating a residence used to harbor and conceal IAs before they were transported further into the United States. Since that time, federal, state, and local law enforcement agencies have continued to observe vehicles associated with JIMENEZ and the TCO traveling to the same desert areas previously known to law enforcement as pickup areas for this TCO.

7. In August 2024, the Pinal County Sheriff's Office ("PCSO"), the U.S. Border Patrol ("USBP"), and HSI Casa Grande, received confidential information that JIMENEZ had been elevated to the role of coordinator within the TCO. A coordinator is an individual who provides instructions to and oversees the TCO's desert guides and scouts, load drivers, and stash house operators to facilitate the illegal entry, transportation, and harboring of IAs into and throughout the United States.

8. That same month of August 2024, a PCSO Detective conducted a vehicle stop on Interstate 10 ("I-10") westbound. The PCSO Detective and Border Patrol Agents ("BPAs") with the United States Border Patrol determined that the driver of that August 2024-event was transporting two IAs to the Phoenix metropolitan area. When questioned by the officer, the driver identified JIMENEZ as the person who had recruited them to transport IAs and who had provided detailed instructions for the smuggling event. The driver provided two telephone numbers for JIMENEZ. The driver also provided a vehicle description of JIMENEZ's car as a white Jeep Cherokee, which the driver had seen JIMENEZ driving. The driver also provided an address for JIMENEZ located in Tempe, Arizona.

9. Agents confirmed the two phone numbers given by the driver belonged to JIMENEZ. Agents also confirmed that the white Jeep belonged to JIMENEZ. The driver from the August 2024-event also told agents that they had worked with JIMENEZ previously and had done some successful runs. The driver said they had seen the IAs go upstairs in that apartment complex in Tempe.

10. For example, on a separate occasion in the summer of 2024, that same driver had met JIMENEZ at the Tempe address and saw JIMENEZ's vehicle. The driver of this event also provided photos of JIMENEZ to confirm his identity. One of the photos associated with one of the numbers given by the driver of JIMENEZ had a photo of JIMENEZ, which agents confirmed was him. The picture associated with the other number given by the driver ties JIMENEZ to the August event because it depicts the route that was sent to the driver and shows a map image of the apartment units located at Tempe, AZ. That Tempe address and the white Jeep were both later confirmed to be associated with JIMENEZ by the following surveillance:

11. On September 19, 2024, HSI Special Agents ("SAs") conducted static and mobile surveillance at the address provided by the driver of the August smuggling event—the address in Tempe, Arizona ("JIMENEZ's Residence"). Upon arrival, the SAs observed a 2017 white Jeep Grand Cherokee, bearing Arizona license plate LSA56N (the "White Jeep"). Motor Vehicle Department checks confirmed that the White Jeep was indeed registered to JIMENEZ. Agents noticed the white Jeep parked in a space near a green apartment building near some apartment units. The White Jeep matched the description provided by the driver from the August smuggling event. SAs observed JIMENEZ emerge from the stairwell area of the green building and walk to the White Jeep. The SAs recognized JIMENEZ from previous booking photos and from the photo provided from the driver's phone and associated with one of the phone numbers for JIMENEZ.

12. SAs also confirmed that individual was JIMENEZ by their participation in the earlier HSI Phoenix investigation targeting JIMENEZ and the TCO. The SAs surveilled JIMENEZ and observed him leave in the White Jeep and then return, re-enter the same stairwell, continue to the third-floor balcony, and enter into one of the apartment units. This is significant as the driver from the PCSO stop in August stated they observed the IAs go to an upstairs apartment in the Tempe location.

13. On September 20, 2024, investigators received information that a vehicle would be traveling from the Phoenix metropolitan area to the Tohono O'odham Nation

(TON) to pick up IAs along State Route 86 ("SR86"). A car was observed traveling south along Federal Route 15 ("FR15") from the United States Border Patrol Immigration Checkpoint located at mile marker 30 on FR15. An officer with the Tohono O'odham Police Department ("TOPD") observed the car traveling eastbound along SR86 and recognized it as being new to the TON and not registered to any known tribal members. This is significant as FR15 and SR86 are located on tribal lands. One common clue investigators look for when identifying alien smuggling events is that there will be vehicles that are not registered or associated to members of the TON being used to transport IAs due to the close proximity of the TON reservation with the International Boundary Fence (IBF). PCSO Detectives later observed the car traveling westbound along Interstate 10 ("I-10") at mile marker 218 and relayed that the vehicle had multiple occupants and appeared to be sitting low, indicating that it was carrying a heavy load. Shortly after, BPAs followed the vehicle to an apartment building in Mesa, Arizona ("the Apartments"), where BPAs lost visual of the vehicle. On the rear of the vehicle there was a visible dirt imprinted handprint. This is significant as it is common for vehicles that have just picked up IAs to have dirt and debris in or on the vehicle. This is because the IAs would have been traveling in the desert for hours or days and carry a large amount of dirt and plant debris on their shoes, clothes, and skin. While agents were following that car, another agent with HSI was sitting at JIMENEZ's residence and observed JIMENEZ exit his apartment, get in the White Jeep and leave the apartment complex. JIMENEZ drove to Adrian's Mexican Food in Mesa, then returned to the apartment complex. Upon exiting his vehicle and walking towards his apartment, the SAs observed JIMENEZ carrying what appeared to be a large bag of take-out food. Shortly after, the SAs once again watched JIMENEZ leave the apartment complex and drive the White Jeep, which traveled to a residence located in Mesa, Arizona. The vehicle was observed parked at the end of the driveway of the residence for a few minutes and then the SAs observed an individual walk away from the White Jeep as it began backing out of the driveway. The SA lost visual for a brief amount of time. Investigators maintained their visual of that residence, and after a short period of time, the

White Jeep returned to the residence. A single unidentified male subject exited the White Jeep Grand Cherokee and approached the house with a suitcase and backpack. The subject

 

was dressed completely in black. This was the only time agents had witnessed JIMENEZ drive all the way into the driveway. This particular occurrence is significant, as the proximity and timing directly coincides with the trip made by the car spotted in the TON reservation. The below images depict the handprint on the rear of the vehicle of the car and the individual that was dropped off by JIMENEZ in the white Jeep at the Mesa residence.

    14. On October 3, 2024, Officers with the TOPD conducted a traffic stop on that car that was seen at the TON reservation. Agents determined that the driver and front seat passenger were actively transporting four IAs to the Phoenix metropolitan area. Two of the four IAs were in the trunk area of the vehicle. All vehicle occupants were arrested and transported to the San Miguel Law Enforcement Center for further processing and investigation. A BPA and HSI SA conducted post-Miranda interviews of the two United States citizens. The driver stated that they had been recruited via social media for a job driving. They had been sent down on multiple prior dates during the month of September to pick up IAs along SR86. The driver indicated having taken the same route that was used on the September 20, 2024-event and advised of the same drop off location (the Apartments) as described in paragraph 11. The driver confirmed that they were paid approximately $1,000 per person successfully transported to the Apartments. The below

images depict the IAs that were discovered in the trunk area of the car seen at the TON reservation.

 

15. On October 4, 2024, a vehicle tracking warrant (24-5411MB) was issued for the White Jeep. On October 8, 2024, pursuant to that warrant, officers installed a tracking device on the White Jeep when it was parked outside of JIMENEZ's Residence.

16. On October 15, 2024, GPS tracking data revealed the White Jeep traveled to a residence in Mesa, Arizona. That residence was the same residence that JIMENEZ was seen driving to on September 20, 2024, where he dropped off a man in black. Vehicles observed at this residence have been registered to another known smuggler who was encountered during a previous smuggling event that took place in September 2023 on the Tohono O'odham Nation near Federal Route 19, where that smuggler admitted to BPAs that they were in the area to pick up IAs and transport them further into the United States. That smuggler was also arrested in 2019 for smuggling two IAs from China inside a modified compartment of a vehicle through the Otay Mesa Port of Entry in California.

## II.   Current Vehicle Stop

17. On January 28, 2025, at approximately 0800 hours, I, BPA Johanna Nordland in conjunction with Detectives with the PCSO and SAs with HSI, was conducting surveillance at a Motel 6 in Mesa, Arizona, pursuant to a joint investigation targeting JIMENEZ, described above in paragraphs 6 through 14 as a known human smuggling

coordinator operating out of the Tempe and Mesa, Arizona area. As explained above, JIMENEZ has been the subject of investigation regarding human smuggling since 2021. He was initially a load driver and intelligence shows he has recently ascended within the organization to the role of smuggling coordinator. Multiple events of human smuggling have been tied to JIMENEZ as a coordinator.

18. JIMENEZ's vehicle, the White Jeep described above, was observed parked in the parking lot of the Motel 6. At 0820 hours on January 28, 2025, I positioned my unmarked government vehicle with a clear line of sight to the driver's side door of the Jeep Grand Cherokee.

19. At approximately 1015 hours I observed JIMENEZ leave his hotel room along the upper balcony of the motel. JIMENEZ was wearing black pants, a black shirt, and appeared to be carrying a white bag. Upon approaching the White Jeep, JIMENEZ opened the rear driver's side door and placed the bag inside the vehicle before getting in the driver's seat. I advised Detective Amanda Canzona that I had visual of JIMENEZ leaving the parking lot and pulling out onto Hampton Avenue traveling westbound. I pulled out behind JIMENEZ and observed him indicate with his right turn signal. JIMENEZ then turned northbound onto Country Club Dr.

20. I observed as Detective Canzona pulled out behind the Jeep Grand Cherokee and activated her emergency equipment to include fully functioning red and blue flashing lights. The White Jeep then pulled into the southeast corner of the Pep Boys Parking lot in Mesa, Arizona. I pulled over to allow Detective Canzona to conduct her traffic stop (for suspended registration) and confirm the identity of the driver.

21. At approximately 1020 hours I was notified that PCSO had positively identified the driver as JIMENEZ via a Sonoran driver's license and was requesting assistance from the United States Border Patrol as JIMENEZ was suspected of being in the United States illegally. I advised I would be responding.

22. Upon arriving on the scene, I was advised that JIMENEZ only had his Sonoran Driver's License and did not have any other form of identification. I was further informed that JIMENEZ did not speak English and only spoke Spanish. I approached JIMENEZ and introduced myself as a Federal Agent with the United States Border Patrol. I then conducted an immigration inspection to determine alienage. I determined that JIMENEZ was in the United States without the proper immigration documentation that would allow him to enter in, pass through, or remain in the United States legally. The





images here show a contrast between the images of JIMENEZ provided by the driver of the August event (picture on the right) and the day of arrest (picture on the top left). The bottom picture is of JIMENEZ at the Mesa residence after having made a transaction with the residence occupant.

### A. First Miranda Warning

23.     At approximately 1053 hours, I placed JIMENEZ under arrest and advised him of his Miranda Rights. I then asked if he understood his rights, to which he replied that he did. I then conducted a pat down of JIMENEZ and discovered a methamphetamine pipe and what appeared to be a bag of Methamphetamine. JIMENEZ confirmed it was his and that it is Crystal Methamphetamine. JIMENEZ was then placed in the back of Detective Canzona's patrol vehicle. I contacted Tucson Sector Dispatch to run records on the vehicle and JIMENEZ. I then advised that I had placed JIMENEZ under arrest for illegal status within the United States. We learned that JIMENEZ had entered the United States illegally about 12 years ago, and there were no prior deportations in his record.

24.     Detective Canzona requested a tow for the vehicle and SAs Skye Crawford and Nicolos Moore conducted an inventory search of the vehicle. SA Crawford discovered a white bag that contained a black bag with several small baggies of what appeared to be black tar heroin. This was the only white bag in the vehicle and is believed to be the same white bag I observed him leaving his motel room with. Through my training and experience and the training and experience of the other law enforcement officers on scene, it is believed that the contents of the bag are consistent with that of what is commonly referred to as Black Tar Heroin.

25.     Also in the vehicle was a Mexican Voter Registration Card bearing the name Raul FRANCISCO-Leonardo (DOB: 11/14/2003). I presented the card to JIMENEZ and asked who it belonged to. JIMENEZ stated it was his cousin's. When asked what his cousin's name was, JIMENEZ was unable to provide a response. It is common for load drivers and coordinators to have the identification cards of the IAs that they transport within the United States. Personal items or identification cards will often be left behind in the vehicles that are being utilized for the illegal transport of IAs within the United States. It is also common for load drivers and coordinators to claim familial relation to the people they are smuggling into and throughout the United States, as it has the potential to create a convincing story that is not always easy to disprove. The fact that he was unable adequately

identify the subject and actively lied regarding the identification of the subject is indicative of his involvement in alien smuggling.

26.  Upon the discovery of the controlled substances, JIMENEZ was placed under arrest by the PCSO for transporting narcotics. The vehicle was then towed for evidence by the PCSO. JIMENEZ was then transported to the Casa Grande Border Patrol Station located in Casa Grande, Arizona for further processing and investigation.

27.  Upon arriving at the Casa Grande Border Patrol Station, JIMENEZ's data was entered into the E3 Processing System and his fingerprints were rolled and submitted.

### B. Second Miranda Warning

28.  At approximately 1447 hours, JIMENEZ was advised that investigators had evidence of his direct involvement as an alien smuggling coordinator. JIMENEZ was advised that he was being charged with violation of 8 U.S.C. § 1324 (a)(1)(A)(v)(I) and 1324(a)(1)(B)(i)—Conspiracy to Transport Illegal Aliens. JIMENEZ was reread his Miranda Warnings per service form I-214. JIMENEZ was asked if he was willing to speak to agents about the alien smuggling charge without the presence of his attorney. JIMENEZ declined to speak with agents and stated he wanted to have an attorney present.

29.  At the time of his arrest, JIMENEZ had two cellphones in his possession. One was discovered on his person; the other was found in the search of the car. JIMENEZ admitted both phones belonged to him. JIMENEZ appeared agitated about the second phone being discovered in the car and was adamant that he would not provide consent to allow agents to search that phone.

//

//

//

//

30. Based on the facts and circumstances stated in this Affidavit, your affiant submits there is probable cause to believe that the defendant, Edgar Guadalupe JIMENEZ-Aguilar, did knowingly and willfully combine, conspire, confederate, and agree with persons known and unknown, to transport and move within the United States aliens who had come to, entered in, and remained in the United States in violation of law, by means of transportation and otherwise, and in furtherance of such violation of law, in violation of Title 8, United States Code, Sections 1324(a)(1)(A)(ii), (a)(1)(A)(v)(1), and (a)(1)(B)(i).

JOHANNA M NORDLAND
Digitally signed by JOHANNA M NORDLAND
Date: 2025.01.30 07:56:31 -07'00'

Johanna M. Nordland
Border Patrol Agent
United States Border Patrol

Sworn to before me and subscribed telephonically on this 30th day of January 2025.

M Morrissey
HONORABLE MICHAEL T. MORRISSEY
United States Magistrate Judge